UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:07-cr-72 |
| | ) | Judge Collier/Carter |
| CHARLES L. FOSTER | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Charles L. Foster's Motion to Suppress (Doc. 17), Supplement to Motion to Suppress (Doc. 25) and Second Supplement to Motion to Suppress (Doc 33) are before the undersigned Magistrate Judge having been referred for a report and recommendation pursuant to 28 U.S.C.§ 636(b)(1)(B).

Defendant seeks to have the search of his residence suppressed on the ground that the search warrant lacked probable cause. For the reasons stated herein, it is RECOMMENDED the defendant's motion to suppress be DENIED.

II. Relevant Facts

The facts are contained within the four corners of the affidavit and search warrant for the defendant's residence at 224 Gliden Street in Athens, Tennessee. The search warrant and affidavit in support thereof are filed as Doc. 32-2 at pages 2-14. The affidavit supporting probable cause sets forth in relevant part:

> (4.) In the summer of 2006, your Affiant began receiving information from law enforcement officers and confidential sources that Charles L. Foster was involved in the distribution of cocaine in Athens, McMinn County, Tennessee. Your Affiant is aware that Charles L. Foster has convictions for two (2) counts of

1

Possession of Cocaine for Resale, three (3) counts of Aggravated Burglary, two (2) counts of Theft, and Attempted 2nd Degree Murder.

(5.) In January, 2007, your Affiant and Detective Scottie Webb with the Athens Police Department met with a confidential source (CSI), who advised your affiant that in the past, he/she has purchased crack cocaine from Charles Foster, and that he/she could purchase from him again.

(6.) On January 11, 2007, Agent Eric Allman with the 10th Judicial District Drug Task Force spoke with a known drug dealer in Athens, TN, who told Agent Allman that he/she had met Charles Foster and believed he/she could purchase crack cocaine from Charles Foster.

(7.) CS2 is a confidential informant who desires to remain anonymous and whose name your affiant has disclosed to you, the reviewing magistrate. [sic] Who has worked for the Monroe County Sheriff's Department, the Madisonville Police Department, the Sweetwater Police Department, and the 10th Judicial District Drug Task Force. He/she has provided information regarding narcotics trafficking and narcotics dealers to law enforcement officers at least thirty (30) times. The information provided by CS2 has been verified by law enforcement as true and accurate. CS2 has made approximately twenty (20) controlled purchases of narcotics from drug dealers in the 10th Judicial District under the guidance of law enforcement. These buys have led to criminal convictions against several different drug dealers in the 10th Judicial District.

On January 29, 2007, CS2 contacted Detective Marty Kyle from the Sweetwater Police Department regarding a possible purchase of crack cocaine he/she could make from a known drug dealer in Sweetwater, TN, hereinafter referred to as Dealer. Dealer had told CS2 that they would have to drive to Athens, TN, to get the crack cocaine. Detective Kyle met with the CS2, and gave him marked confidential funds with which to purchase the crack cocaine. CS2 then met with Dealer, and rode with him to Athens, TN. Detective Kyle followed CS2 to the meeting location between CS2 and Dealer. Det. Kyle then followed CS2 and Dealer to Athens, TN. When they arrived in the city, Det. Kyle discontinued any further surveillance. He met back with CS2 in Sweetwater a short time later. CS2 told Detective Kyle that dealer had taken CS2 to a house in Athens, TN. CS2 described the house as a double-wide trailer on the right side of the road at the end of a dead-end road. He described two (2) vehicles in the front yard of the trailer as a white Land Rover and a burgundy Chevelle, both of which are known by your affiant to be driven by Charles Foster.

(8.) On January 30, 2007, your Affiant and Det. Kyle met with CS2 regarding another purchase of crack cocaine from Dealer. CS2 made a controlled call to

Dealer in an attempt to purchase crack cocaine. Dealer indicated they would have to return to Athens to pick up the crack cocaine. Your Affiant gave CS2 marked confidential funds for the purchase and searched CS2 and his/her vehicle for contraband with negative results. CS2 was fitted with an audio transmitting device which would allow your Affiant to monitor and record the conversation between CS2 and Dealer. This transmitting device malfunctioned after CS2 and Dealer first met, and no recording was made. Your Affiant and Det. Kyle followed CS2 to the meeting location between him/her and Dealer. CS2 and Dealer then drove together to 224 Gliden St., Athens, TN. This home is known by your Affiant to belong to Charles Foster. This knowledge is based on arrest records, and personal observations of law enforcement. Your affiant has also verified that Charles L. Foster is the owner of a white Land Rover. CS2 verified that this was the same home he/she and Dealer had gone to the day before to get crack cocaine. CS2 later told your Affiant that when they initially arrived at the home, Charles Foster was not there. Dealer and CS2 went to a gas station nearby, and then returned to the home a few minutes later. While waited in the car, Dealer went into the home and returned approximately seven (7) minutes later. Dealer then turned over the crack cocaine to CS2. Your Affiant and other law enforcement officers followed CS2 and Dealer back to Sweetwater where Dealer dropped CS2 off. CS2 then met back with your Affiant at a debriefing location. CS2 released approximately one gram of crack cocaine to your Affiant. The agents searched CS2 's person and vehicle and found no controlled substances. Law enforcement officers followed Dealer's vehicle to and from Athens, and were able to corroborate CS2 's information regarding each location to which they traveled.

(9.) Within the last 72 hours, Det. Kyle again met with CS2 in Sweetwater, TN. Det. Kyle gave CS2 marked confidential funds for the purchase and searched CS2 and his/her vehicle for contraband with negative results. CS2 was fitted with a digital recording device which would record the conversation between CS2 and Dealer. Det. Kyle then followed CS2 to the meeting location between CS2 and Dealer. CS2 got in Dealer's car and rode with him to Athens. Once again, they went to 224 Gliden St., Athens, TN; the known residence of Charles L. Foster. While CS2 waited in the car, Dealer went into the home and returned approximately ten (10) minutes later. Dealer then turned over the crack cocaine to CS2. Your Affiant and other law enforcement officers followed CS2 and Dealer back to Sweetwater where Dealer dropped CS2 off. CS2 then met back with your Affiant at a debriefing location. CS2 released approximately one gram of crack cocaine to your Affiant. The agents searched CS2 's person and vehicle and found no controlled substances. Law enforcement officers followed Dealer's vehicle to and from Athens, and were able to corroborate CS2 's information regarding each location to which they traveled. Detective Kyle later listened to the audio recording and verified the information provided by CS2.

(10.) Based on his training and experience, your Affiant knows that drug traffickers, in addition to their residences, often utilize outbuilding, garages, property, curtilage and vehicles to secret controlled substances, paraphernalia, and records of drug transactions. Your affiant requests that any outbuildings, garages, barns, property, curtilage and vehicles present be included in the search of the premises herein described.

Doc. 32-2 pp, 10-13.

## III. Discussion

*1. Analysis - Probable Cause*

The defendant raises a number of issues regarding the affidavit used to secure the search warrant. First, the defendant asserts the affidavit does not set forth the requisite probable cause to issue the warrant because the reliability of the informant was not sufficiently established and the information from the confidential informant was not sufficiently corroborated. The affidavit's reliability must stand or fall solely on the information provided within its fours corners. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).

"In reviewing a state magistrate's determination of probable cause, this Court pays 'great deference' to a magistrate's findings, which 'should not be set aside unless arbitrarily exercised.'" *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993) (quoting *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986), *cert. denied*, 479 U.S. 1092 (1987) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). A warrant must be upheld "so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing . . ." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

"Probable cause for the issuance of a search warrant is defined in terms of whether the

affidavit sets out facts and circumstances which indicate a 'fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993)(quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir.), *cert. denied*, 498 U.S. 837 (1990)). The Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983) adopted a "totality of the circumstances" test for determining whether an affidavit establishes probable cause for the issuance of a warrant. *Id*. at 230. The Sixth Circuit in *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996) described the application of the *Gates* test:

> In applying its "totality of the circumstances" test, the *Gates* court identified three factors in determining whether probable cause existed: 1) the basis of the informant's knowledge; 2) the reliability of the informant; and 3) the corroborative evidence presented by the government. *Gates*, 462 U.S. at 230-32, 245, 103 S.Ct. at 2328-29, 2335-36; *Leake*, 998 F.2d at 1363. The Gates court noted that these factors are not to be analyzed as "separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328. Rather, the reviewing court is to weigh them together in determining whether they form a substantial basis for finding probable cause. Id. The strength of one or more of these factors may compensate for the deficiencies of another factor. *Gates*, 462 U.S. at 233-34, 103 S.Ct. at 2329-30.

(Internal footnote omitted), *see also United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999). In keeping with this "totality of the circumstances test," corroboration is not always necessary.

> When an informant has a proven track record for providing reliable information, corroboration of the information he provides is not necessarily essential, as long as there is sufficient indication of his basis of knowledge for concluding that contraband or evidence of a crime will be found in a particular place. *See Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence).

*United States v. Smith*, 182 F.3d 473, 481 n. 4 (6th Cir. 1999); *see also Shamaeizadeh*, 80 F.3d at 1136 n.2.

> The recognition of corroborative evidence as a factor in determining whether probable cause exists should not be construed as making this factor an explicit component of the "totality-of-the-circumstances" test. *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328. The *Gates* court did not include this factor in the test itself. Id. Nonetheless, the *Gates* court relied heavily on the police's corroboration of the information provided by the informant. See *Leake*, 998 F.2d at 1363. Therefore, while corroborative evidence is not an explicit component of *Gates's* "totality-of-the-circumstances" test, it remains an important factor in making the probable cause determination. *Id.* at 1365.

*Id.* at 1136 n. 2; *see also United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (*en banc*) (police corroboration is not required where the informant's reliability is sufficiently established; corroboration is "rightly" required where there is an absence of any indicia of the informant's reliability).

A magistrate's probable cause determination should be made in "realistic and common sense fashion," and reviewed in the same manner. *Finch*, 998 F.2d at 351 (further citations omitted).

The search warrant affidavit at issue in this case clearly establishes "a fair probability that evidence of a crime [will] be located on the premises of the proposed search." *Bowling*, 900 F.2d at 930. Agent McNelley had explicit and detailed information concerning drug sales or drug possession on the premises of defendant's residence within the very recent past. Furthermore, under the Sixth Circuit's opinion in *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (*en banc*), the affidavit for the search warrant in the instant case passes constitutional muster. The *Allen* decision held that an affidavit based upon personal observation of criminal activity by a confidential informant who has been named to the magistrate and who has provided reliable information to the police in the past about criminal activity, though without further specificity as

6

to the type of such activity, can be sufficient for a magistrate to find probable cause to issue a warrant even without independent police corroboration. *Id.* at 971; *see also, United States v. Pinson*, 321 F.3d 558, 563-64 (6th Cir. 2003) (Purchase of narcotics from a specific location by a named informant whose reliability was well-established was sufficient to support a search warrant for that location, even without the name of the seller). The *Allen* affidavit does not name the confidential informant; it states simply that the informant's name was disclosed to the judge to whom the search warrant application was made. Likewise, while the affidavit in this case does not state the informant's name, it does state the affiant gave the magistrate the informant's name. Additionally, the affidavit in the instant case also contains much more detail and corroboration than the affidavit in *Allen*.

In this affidavit, Agent McNelley firmly establishes each of the three factors contemplated by *Gates* and *Shamaeizadeh* for evaluation of the totality of the circumstances. First, he establishes the basis of the informant's knowledge via first hand interviews with CS2. CS2 provided specific information about the locations to which he and Dealer went to purchase crack and stated that the crack he got from Dealer was obtained at the defendant's residence. Further, CS2 had abundant amounts of experience and knowledge about drugs and the drug trade based at least in part on prior occasions of providing assistance to law enforcement.

Second, Agent McNelley establishes the reliability of the informant through several means. Even if CS2 were an unnamed informant, Agent McNelley notes that CS2 worked and provided information to at least four different law enforcement agencies. Further, he had done so on at least thirty (30) occasions, and his information had been confirmed or verified as being true and accurate. Additionally, CS2 had made approximately twenty (20) controlled purchases of

narcotics for law enforcement agents which ultimately led to the arrest and convictions of several drug dealers. The informant's credentials for reliability and truthfulness are therefore substantial.

The first and second factors in this case are sufficient by themselves to establish probable cause. Nevertheless, there is also corroborative evidence, the third factor. Agent McNelley outlines a significant number of facts corroborating the information provided by the informant. 1) The defendant was known to have prior felony convictions for selling cocaine. 2) Other law enforcement officers had information beginning in Summer 2006 that the defendant was selling drugs. 3) Other informants, although unnamed whose reliability was not established, also provided information that the defendant was selling drugs during the Summer of 2006. 4) CS1 advised authorities in January 2007 that s/he bought crack cocaine from the defendant in the past and could continue to do so. The reliability of CS1 was not established. 5) On January 11, 2007, a "known drug dealer" in Athens, Tennessee identified the defendant as a dealer of crack cocaine. The reliability of "known drug dealer" was not established. 6) CS2's report that s/he had gone to a particular location to obtain drugs from "Dealer" who drove them there was corroborated by police officers who were able to identify the residence and vehicles there as belonging to the defendant from arrest records and personal observations of other police officers. 7) Visual surveillance was performed by law enforcement for the duration of both controlled buys of drugs from the defendant's residence on January 30 and February 7. 8) Audio surveillance was performed by law enforcement for the duration of the controlled purchase of drugs from the defendant's residence on February 7. Therefore, as the Government argues, corroboration in this case was extensive and took the form of information from other law enforcement officers, reviews of public records, tips from anonymous informants, and visual and audio surveillance.

*2. Material Omissions*

The second basis for the defendant's challenge to the search warrant concerns alleged material omissions from the search warrant affidavit.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978) established the procedure by which a defendant could seek the suppression of evidence by challenging the veracity of statements made by an affiant in order to secure a search warrant. "Counsel can attack the validity of a search warrant by alleging that the affidavit contains deliberately false statements." *United States v. Hill*, 142 F.3d 305, 309 (6th Cir.), *cert. denied*, 525 U.S. 898 (1998) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Under *Franks v. Delaware*, 438 U.S. 154, 171 (1978) and its progeny, a defendant can also seek the suppression of evidence by showing that the affiant deliberately or with reckless disregard for the truth made material omissions in the affidavit. *United States v. Charles*, 213 F.3d 10, 23-24 (1st Cir. 2000), *cert. denied*, 121 S.Ct. 272 (2000); *United States v. Green*, 175 F.3d 822, 828 (10th Cir.) *cert. denied*, 528 U.S. 852 (1999); *United States v. McNeil*, 184 F.3d 770, 775 (8th Cir. 1999); *United States v. Chalmers,* 1990 WL 66817*3 (6th Cir. 1990). A material omission is one which, if it had been included in the affidavit, would negate the finding of probable cause. *Green*, 175 F.3d at 828; *Chalmers*, 1990 WL 66817*3.

Under the *Franks* procedure, a defendant must make a preliminary showing, usually by affidavit, that a material omission was made. *See Hill*, 142 F.3d at 310. If the defendant comes forward with a preliminary showing of an omission, then the court must consider whether probable cause would have been negated if the omission had been included in the search warrant affidavit. *Id.* If the answer to this last question is affirmative, then an evidentiary hearing is normally necessary to determine whether the alleged omission was, in fact, made. *Id.*

9

The instant case is somewhat unusual in that the government and the defendant have entered into a stipulation concerning one of the omissions at issue. Thus the defendant has made a preliminary showing of the omission and established that omission conclusively. The only issue to consider then is whether the omission is material, *i.e.*, if it had been included in the affidavit, would it have negated probable cause. *Green*, 175 F.3d at 828; *Chalmers*, 1990 WL 66817*3.

The stipulated omission concerns a stop that Dealer and CS2 made at a gas station on each trip en route from Sweetwater, Tennessee to Athens, Tennessee on January 30 and February 7, 2007. Specifically, the parties have stipulated that on both January 30, 2007 and February 7, 2007, while traveling together in the same car from Sweetwater to Athens, CS2 and Dealer stopped at a convenience store to buy gas. CS2 gave money for the gas to Dealer who went inside with the money to pay for the gas. Law enforcement observed both these stops, but they were not included in the affidavit.

The stipulated information does not conclusively establish that Dealer bought the cocaine at the convenience stores but it does leave open the *possibility* that Dealer bought the cocaine at the convenience stores. Nevertheless, "[t]o find probable cause, the law does not require that we rule out every conceivable explanation other than a suspect's illegal conduct." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998). "Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate a 'fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Finch*, 998 F.2d 349-352 (6th Cir. 1993) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir.) *cert. denied,* 498 U.S. 387 (1990)); *see also*

*United States v. Couch*, 367 F.3d 557, 560 (6th Cir. 2004). CS2 stated Dealer gave him cocaine after he had been inside the defendant's home, not before, thereby indicating Dealer obtained the cocaine inside the defendant's house. CS2 is an informant well known to police with a long track record for reliability, veracity, and results. This information, along with the significant amount of other information already discussed in this report and recommendation, indicated there was a fair probability that evidence of drug trafficking would be found in defendant's trailer.

Finally, the undersigned turns to the affidavit of Wayne Smith submitted by the defendant in support of his motion to suppress. Wayne Smith is a former Special Agent with the United States Department of Justice with extensive training and experience over a thirty year period in drug trafficking investigations. In 2005, Mr. Smith became a private investigator in Tennessee. Mr. Smith states in his affidavit that "it [is] very unusual and extremely rare that a street level drug dealer would allow a customer to become aware of his source of supply for the drugs he sells at an initial purchase." (Smith Aff., Doc. 25-2, p. 1). Mr. Smith reasons that dealers do not want to eliminate themselves as middle men in future drug transactions and do not want to give a drug user a bargaining chip with police, *i.e.*, the identity of the supplier, in the event that the user is arrested. *Id.* at 2. Defendant argues that as a police officer with extensive experience in narcotics investigations, Agent Sam McNelley would have known this reality and should have put this information in the search warrant affidavit. Further, defendant argues that the failure to include the information constitutes a material omission made with reckless disregard for the truth which, had it been included, would have negated probable cause.

This particular argument by defendant is an ambitious one. "[A]n affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official

11

conduct than one which affirmatively includes false information." *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001) (quoting *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)). "This is so because an allegation of omission potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Id.* This alleged omission appears to fall in the category of endless conjecture; nevertheless, assuming it to be true and included in the affidavit, the fact remains that Dealer told CS2, a reliable informant, that he would take CS2 to Athens to buy cocaine. Officers saw Dealer twice take CS2 to the defendant's residence in Athens (after stopping for gas) where Dealer left the defendant inside the car, entered the residence, stayed for several minutes, and returned with cocaine. That such conduct is rare does not negate what the officers saw or what CS2 said happened. People sometimes do unusual things. Behavior is not always predictable, and people do not always act in their best interests. As previously stated, the law does not require that every conceivable explanation other than the alleged illegal conduct be ruled out. Even when incorporating *all* the omitted information into the affidavit (the stops at the convenience stores and Mr. Smith's opinion concerning dealers, their customers and their suppliers), I conclude the affidavit *in toto* sets forth a fair probability that evidence of drug dealing would be found in the defendant's trailer. Thus, defendant's motion to suppress evidence on the ground that the search warrant affidavit omitted material information fails.

## IV. Conclusion

For the reasons stated herein, it is **RECOMMENDED** that Defendant Charles L. Foster's Motion to Suppress (Doc. 17), Supplement to Motion to Suppress (Doc. 25) and Second Supplement to Motion to Suppress (Doc 33) be **DENIED**.[1]

Dated: December 18, 2007
s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).