UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

CHARLES FOSTER, )
)
Petitioner, )
)
v. ) Nos.: 1:11-cv-184;1:07-cr-72
) *Mattice/Carter*
UNITED STATES OF AMERICA, )
)
Respondent. )

## **MEMORANDUM OPINION**

Acting *pro se*, federal inmate Charles Foster ["petitioner" or "Foster"] brings this motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, an amended § 2255 motion, and a supplemental § 2255 motion,[1] [Docs. 77-78 and 91].[2] The United States has filed a response in opposition to the original and amended § 2255 motions, [Doc. 80], but was not ordered to respond to the supplemental § 2255 motion. For the reasons which follow, petitioner's § 2255 motions will be **DENIED.**

### I. Procedural Background

On January 22, 2009, following his guilty pleas to and convictions of one count

---

[1] Foster's original collateral review submission, though filed as a motion to appoint counsel, was deemed to be a barebones § 2255 motion and was ordered to be docketed as such, [Docs. 75-77]. Petitioner filed an amended § 2255 motion, restating one ineffective assistance claim asserted in the barebones motion and added one entirely new claim, [Doc. 78]. Then came the supplemental § 2255 motion, styled as a "Motion Pursuant to 28 U.S.C. § 2255(f)(3), In Light of *Descamps v. United States*/Retroactively Applied," [Doc. 91].

[2] All citations to the record refer to petitioner's criminal file.

of conspiracy to distribute at least five grams of cocaine base and one count of possessing at least five grams of cocaine base for intended distribution, petitioner was sentenced to 150 months' imprisonment and five years of supervised release. He carried a direct appeal to the Sixth Circuit, where his attorney filed a brief under *Anders v. California*, 386 U.S. 738, 744 (1967). The Sixth Circuit reviewed the circumstances surrounding petitioner's guilty pleas and sentencing and, finding that he had no plausible claims regarding either his conviction or his sentence, affirmed this Court's judgment, [Doc. 71, Order of April 22, 2010].

Foster then filed a motion to modify or reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2), relying on Amendment 706 to the Sentencing Guidelines, [Doc. 73]. In the order resolving the motion, the Court referred to Foster's Presentence Investigation Report ["PSR"] as stating that he was a career offender under USSG § 4B1.1 and that, with a criminal history category of VI, a total offense level of 31, his advisory guideline range was 188–235 months' imprisonment. The Court then noted that the Drug Quantity Table in USSG § 2D1.2 had played no role in the determination of Foster's guideline range and that, upon the government's request for a downward departure, his sentence had been reduced to 150 months on each count to be served concurrently. Because Amendment 706 was in effect when petitioner was sentenced and because he was sentenced as a career offender, the Court rejected his arguments that Amendment 706 should be applied retroactively to lower his sentence and denied his motion, [Doc. 74].

There followed this original and amended § 2255 motions to vacate and, two years and one month later, the supplemental § 2255 motion.

2

## II. Standard of Review

Title 28 United States Code section 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

Petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Under Rule 8 of the Rules Governing Section 2255 Proceedings, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate and the other documents show conclusively that the petitioner is not entitled to relief under § 2255, there is no need

3

for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. Factual Background

Though Foster pled guilty without a plea agreement, the government offered a factual basis in support of his guilty pleas, [Doc. 46], which he agreed was correct, [Doc. 70, Rearrainment Hr'g Tr. at 11]. According to that document, members of the 10th Judicial Drug Task Force began investigating petitioner in the summer of 2006. Early in 2007, officers were approached by a confidential informant ["CI"], who told them that he[3] had bought crack cocaine from petitioner in the past and could do so again. That same month, agents spoke with a drug dealer who informed them that he had met Foster and believed he could buy crack cocaine from him. Another CI [CI 2], whose reliability had been proven, agreed to make controlled purchases of narcotics for law enforcement. The dealer and CI 2 talked, and the dealer told CI 2 that they would have to go to Athens, Tennessee, to get the narcotics. On January 29th and 30th, 2007, police detectives in Sweetwater, Tennessee, gave CI 2 marked bills. CI 2 met the dealer, and the two traveled to Athens, Tennessee, to make the controlled drug buys from petitioner.

During the first trip, detectives conducted surveillance, until CI 2 and the dealer reached the Athens city limit. Upon completion of the purchase, CI 2 met with the law enforcement agents, surrendered the drugs, and gave a detailed description of the double-wide mobile home at the end of a dead-end street where they had gone to buy

---

[3] Though the Factual Basis uses "s/he" as the personal pronoun to refer to the CI and later to the dealer, for the sake of simplicity, the Court will use the pronoun "he" to refer to these individuals.

4

the drugs and the vehicles which had been parked next to the trailer home. Based upon that description, the officers recognized the residence as being petitioner's home and the vehicles as belonging to him. CI 2 had remained in the vehicle while the dealer had conducted the drug transaction inside the residence.

The same sequence of events occurred the next day, except this time, the surveillance extended to the residence and there was an unsuccessful attempt to record the drug purchase. Further, CI 2 provided the agents with approximately one (1) gram of cocaine which had been obtained from the dealer at Foster's residence.

On February 7, 2007, agents arranged to make another controlled buy from the dealer through CI 2. Once again, CI 2 and the dealer left Sweetwater and made the trip to the defendant's residence in Athens, where the dealer went inside for a few minutes and returned with crack cocaine, which he then gave to CI 2. The trip to Athens and the meeting in Athens was under surveillance by the officers. Later, CI 2 met with the agents, told them what had occurred, and gave them approximately one (1) gram of crack cocaine he had obtained from the dealer at Foster's residence. CI 2's recounting of the events was corroborated by the recording and visual surveillance.

Based on the drug purchases, officers obtained a search warrant for Foster's residence. He was home when the warrant was executed. Agents informed him of his rights, which he waived, and he gave a written statement in which he admitted to selling crack cocaine. He said that he had approximately ¼ oz. of crack in the house which he had received from his supplier earlier that day. Agents recovered the drugs,

5

which later laboratory tests revealed to be 5.5 grams of crack cocaine. Foster also said that he had begun selling crack shortly before Christmas when he was laid off from his job and that he got ¼ oz. per month from his source, which he then resold.

IV. Discussion

In his motion and amended § 2255 motion, petitioner offers two claims of ineffective assistance of counsel, both of which involve his classification as a career criminal. In those claims, Foster alleges that counsel failed to explain that he could face an increased sentence for being a career criminal and then failed to challenge his career criminal designation—a designation of which Foster is actually innocent. The amended motion also contains a Fair Sentencing Act claim. The claim raised in the supplemental § 2255 motion likewise centers on the career-criminal issue, in that Petitioner, citing to *Descamps v. United States*, 133 S. Ct. 2276 (2013), asserts that he did not qualify for sentencing as a career criminal because the state criminal statute upon which was based his prior state conviction for attempted second degree murder was divisible.

The United States argues, in its response, that Petitioner's' claims provide no basis upon which relief may be granted and that his motion(s) should be denied. Those arguments have merit and the Court will **DENY** the motions.

A. *Ineffective Assistance of Counsel*

Claims of ineffective assistance arise from the guarantee in the Sixth Amendment, which provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to

6

counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id.* As with any other claim under § 2255, a movant bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

When considering *Strickland*'s second prong, in the context of a guilty plea, the movant must show a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59

7

(1985). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Moss v. United States*, 323 F.3d 445, 454-55 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995) ("[A] defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996).

The standard by which a court reviews counsel's performance is highly deferential, *Strickland*, 466 U.S. at 689, and counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). While both prongs must be established in order to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697. A petitioner alleging ineffective assistance of counsel bears a heavy burden of proof. *Pough*, 442 F.3d at 966.

In his § 2255 motion, Foster contends that counsel failed to advise him that he would face a career criminal enhancement before he entered his guilty pleas, to challenge the career criminal finding at sentencing, and to raise on appeal his actual innocence of the career offender enhancement. More specifically, Petitioner argues that the enhancement was not supported by all the necessary paperwork, which is

8

required under *Begay v. United States*, 553 U.S. 137 (2008), and *Shepard v. United States,* 544 U.S. 13 (2005).

   1. *Failure to advise of a possible career-criminal enhancement*

The claim reads, in its entirely: "Counsel did not state to Foster he would be charged under the CCA [Career Criminal Act] when signing the plea," [Court File No. 78, Amd. § 2255 Mot. at 5]. In its response, the United States maintains Foster's claim is not only factually undeveloped, but also is refuted by the record.

Respondent is correct that petitioner states his claim only in a conclusory fashion, as no details are supplied to flesh out the claim. Rule 2 of the Governing Rules dictates that the motion, among other requirements, "specify all grounds for relief available to the moving party" and "state the facts supporting each ground." A petition which fails to state the supporting facts is legally insufficient on its face and may be dismissed. *McFarland v. Scott*, 512 U.S. 849, 856 (1994).

In addition, Foster does not contend that, but for counsel's failure to tell him that he faced sentencing as a career criminal, he would have not have pled guilty, but would have stood trial. Thus, he has not alleged, much less shown, that he sustained any prejudice from counsel's purported error, and this omission also is sufficient to justify a dismissal of his ineffective assistance claim. *Strickland*, 466 U.S. at 697.

But even if the claim were not conclusory and were sufficiently pled, the record shows that petitioner knew before he pled guilty that his prior convictions could lead to an increase in his sentence because the Court so advised him during the plea-taking proceedings. The Court asked petitioner: "Do you understand that it is possible that if you have prior convictions those will increase your sentence under the

9

sentencing guidelines," to which petitioner answered: "Yes, sir," [Doc. 70, Rearrainment Hr'g Tr. at 9]. When questioned as to whether petitioner understood that various considerations would play a role in his sentencing and that his "sentence may be more severe or less severe than the sentence called for by the sentencing guidelines," petitioner gave the same affirmative answer, [*Id.*]. Furthermore, prior to those questions being posed to petitioner, he was informed that his maximum sentence was 40 years' imprisonment for each of the two offenses to which he was pleading guilty and indicated that, even knowing of the penalties attached to his crimes, he wished to persist in his plea of guilty, [*Id.* at 7-8].

Therefore, this claim is flatly and clearly contradicted by the record. Petitioner cannot succeed on any claim of prejudice (had one been made explicitly) that, had he known that he could be sentenced as a career criminal, he would not have pled guilty and would have proceeded to trial. This is so because, even after Foster possessed full knowledge of a possible sentence increase based on his prior convictions, he expressed his desire to continue in his pleas of guilty and he did so plead. Furthermore, as the United States points out, in exchange for his guilty pleas, the government agreed not to file a notice of prior convictions, under 21 U.S.C. § 851, which would have doubled the mandatory minimum sentence to ten years (rather than five years) and increased the maximum penalty to life (rather than forty years). This claim has no merit.

*2. Failure to challenge the career criminal finding at sentencing and on appeal*

In this claim, Foster alleges that his lawyer gave him ineffective assistance at sentencing and on appeal by failing to challenge his career criminal enhancement.

10

Following petitioner's guilty plea, a PSR was prepared. Using the 2007 version of the United States Sentencing Commission Guidelines Manual, the probation officer calculated a base offense level of 26 for the 20 to 35 grams of cocaine base involved in Foster's offenses. However, because petitioner's criminal history included a 1991 Hamilton County attempted second degree murder conviction, with a resulting 8-year sentence; a 1999 McMinn County conviction for possession of cocaine for resale, with an ensuing sentence of 12 years; and a 1999 McMinn County conviction for possession of crack cocaine for resale, which carried a 12-year sentence (to be served concurrently with the prior McMinn County conviction), [PSR, ¶¶ 35, 39, and 40]; the probation officer concluded that he was a career offender,[4] which increased his adjusted offense level to 34. *See* USSG § 4B1.1(b) (" if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply"). However, deducting three levels for acceptance of responsibility, pursuant to USSG § 3E1.1 (a) and (b), resulted in an total offense level of 31.

An assessment of eleven criminal history points established a criminal history category of V, which was elevated to a category VI, due to Foster's career offender classification. *See* USSG § 4B1.1(b). A criminal history category of VI and a total offense level of 31 yielded a guidelines range of 188-235 months' imprisonment.

At sentencing, the Court granted the government's motion for downward

---

[4] A career offender is a defendant who commits either a controlled substance or violent felony federal offense; is at least 18 years old at the time the offense is committed; and has at least two prior felony convictions for a crime of violence or a controlled substance offense. *See* USSG § 4B1.1(a). Foster had three such convictions, but only two of those convictions were needed to find him to be a career criminal.

11

departure, under U.S.S.G. § 5K1.1, and imposed a 150-month term of imprisonment—two years and two months below the bottom of Foster's guidelines range, [Doc. 68, Sent. Tr. at 3, 5-7].

A review of the PSR and the sentencing proceedings shows that Foster was correctly sentenced as a career offender. Indeed, the Sixth Circuit made an independent examination of all the proceedings and found no issue which would have supported a viable direct appeal, [Doc. 71, Order of April 22, 2010].

Because Foster's designation as a career offender was proper, he cannot show any prejudice resulted from counsel's failure to raise the issue at sentencing or in the *Anders* brief counsel filed in the Sixth Circuit in his client's appeal.

In a companion claim, Foster asserts that the prior felony convictions were not to be counted towards his career criminal enhancement under the standards set forth in *Begay v. United States*, 553 U.S. 137 (2008), and *Shepard v. United States*, 544 U.S. 13 (2005). Petitioner's claim apparently rests on the theory that *Begay* and *Shepard* compelled the government to produce paperwork connected to his prior felony convictions to support the career-criminal classification and that, in the absence of this paperwork, he is actually innocent of being a career criminal. He requests that the United States supply the paperwork which it did not furnish during his sentencing.

In *Begay*, the U.S. Supreme Court held that a conviction for a violent felony under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), had to involve conduct that was "purposeful, violent, and aggressive." *Id.* at 144–45. In *Shepard,* the Court identified documents which can be used by a district court to determine whether

a prior conviction constitutes a prior felony under the ACCA. In making that determination, the court is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 26. While both cases involved the ACCA, they likewise apply to sentencing guidelines cases. *United States v. Marrero*, 743 F.3d 389, 394 n.2 (3d Cir. 2014) (*Begay*'s analysis applies to career offender guidelines); *United States v. Baker*, 559 F.3d 443, 453 (6th Cir. 2009) (*Begay* applies to career offender enhancements under the sentencing guidelines.); *United States v. Galloway*, 439 F.3d 320, 323 -324 (6th Cir. 2006) (*Shepard* "is fully applicable to Sentencing Guideline cases that require a court to determine the nature of a prior conviction when the defendant has a prior conviction under a generic statute that may or may not serve as a predicate for a sentencing enhancement."); *United States v. Sanders*, 301 Fed.Appx. 503, 505-506, 2008 WL 4997496, *2 (6th Cir. Nov. 24, 2008) (The application of *Shepard*'s rules "to the definition of crime of violence under the Sentencing Guidelines has become an accepted practice in this circuit.") (citation and internal quotation marks omitted).

The fact that *Begay* and *Shepard* apply to petitioner's career offender enhancement does not explain the reason why petitioner insists that his prior convictions should not have been counted. For example, petitioner has not suggested any basis which would undercut the determination in the PSR that his two prior state court convictions for controlled substance offenses and his one prior state court conviction for attempted second degree murder were predicate offenses for

13

purposes of career criminal classification. Indeed, the Sixth Circuit has held that convictions for the same or similar Tennessee offenses as Foster's qualify as violent felony and controlled substance offenses for purposes of enhanced sentencing. *See e.g., United States v. Beasley*, 442 F.3d 386, 394 (6th Cir. 2006) (Tennessee conviction for attempted second degree murder was appropriately considered a predicate offense for armed career criminal enhancement); *United States v. Brown*, 516 Fed.Appx. 461, 466, 2013 WL 675333, *4 (6th Cir. Feb. 26, 2013) (A conviction for possession of less than 0.5 grams of cocaine with intent to resell, an offense under Tenn. Code Ann. § 39-17-417, is a predicate offense for armed career criminal enhancement.). [Notably, Foster's prior felony drug convictions involved more than 0.5 grams of cocaine.] And he has presented no argument, much less any concrete evidence, to show that he in fact did not have the prior convictions which the PSR attributed to him.

Put simply, Foster has failed to point to any error in determining that his prior felony convictions were predicates which qualified him for a career offender enhancement. Absent such an error to which counsel could have objected, there is no deficient performance attached to counsel's failure to do so. Also, no prejudice resulted from counsel's failure to challenge what has never been identified as an error in the first place. Hence, this companion claim is groundless

B. *Fair Sentencing Act (Amended § 2255 motion, Ground 2; Supplemental § 2255 motion )*

Foster next suggests that, to save money and time, the Court could exercise its discretion and apply the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat.

2373 (2010) ("FSA"), retroactively to lower his sentence for his crack cocaine offenses in this § 2255 proceeding. As authority for his request, he points to Amendment 750 to the sentencing guidelines. In his supplemental § 2255 motion, he relies on *Descamps v. United States*, 133 S.Ct. 2276 (2013), as support for his claim.

The FSA, enacted on August 3, 2010, amended 21 U.S.C. § 841 to require larger quantities of crack cocaine to trigger mandatory minimum sentences. sentences. *United States v. Turner*, 456 Fed. Appx. 545, 547 (6th Cir. 2012). However, "[t]he FSA … does not apply retroactively to defendants, like [Foster], … who were sentenced before the statute was enacted." *United States v. Tillman*, 511 Fed. App'x 519, 521 (6th Cir. 2013) (citing *Dorsey v. United States*, 132 S. Ct. 2321, 2335 (2012)).

Amendment 750, which became effective on November 1, 2011, lowered the base offense levels for crack cocaine quantities listed in U.S.S.G. § 2D1.1(c) to conform to the FSA, but "that amendment did not lower the career offender sentencing guidelines range." *Id.* at 521 (citing *United States v. Williams*, 607 F.3d 1123, 1125–26 (6th Cir. 2010)).

The Court recently entertained this same exact claim, albeit in motions filed under 18 U.S.C. § 3582(c)(2), and found that

> the FSA is not applicable to his sentence. Pursuant to § 3582(c)(2), the Court may reduce a sentence "if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." Application Note 1A to U.S.S.G. § 1B1.10 states that a "reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. 3582(c)(2) and is not consistent with this policy statement if. . . the amendment does not have the effect of lowering [petitioner]'s applicable guideline range because of

15

> the operation of another guideline or statutory provision." Because Defendant is a career offender, he remains at a guideline sentence of 188-235 months, which is based on a total offense level of 31 and a criminal history category of VI. Additionally, Judge Edgar sentenced [petitioner] to 150 months' imprisonment, which is already a departure from the guidelines, [Doc. 92, Order of July 18, 2014, at 2].

Foster offers no reason, and the Court does not discern one, as to why he should obtain any different results by means of a § 2255 proceeding than he obtained by filing motions for a sentence reduction pursuant to § 3582(c)(2) and U.S.S.G. § 1B1.10. The Court finds that his claim is meritless and declines his request.

The Court's finding is unchanged by petitioner's citation to *Descamps*. The Supreme Court did not declare *Descamps* to be retroactive to cases on collateral review. *Wilson v. Warden*, FCC Coleman, 2014 WL 4345685, *3 (11th Cir. Sept. 3, 2014); *Groves v. United States*, 755 F.3d 588, 593 (7th Cir. 2014); *Baker v. Chapa*, 2014 WL 4100712, *1 (5th Cir. Aug. 21, 2014). Nor has the Sixth Circuit so found. *Shelton v. United States*, 2014 WL 460868, *3 (E.D.Tenn. Feb. 5, 2014). And, this Court has already declined to apply *Descamps* retroactively to a § 2255 case on collateral review, absent direction from the Sixth Circuit or the Supreme Court to do so. *See Taylor v. United States*, Case Nos. 4:11-cr-13; 4:13-cv-21, (E.D. Tenn.) (Doc. 228, Order of Sept. 3, 2013).

16

## V. Conclusion

Because all claims raised in these § 2255 motions are meritless, the Court will **DENY** the motions, [Docs. 77-78, 91].

## VI. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner, whose claims have been rejected on the merits, satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner, whose claims have been rejected on a procedural basis, must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude the disposition of those claims was debatable or

wrong. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will follow.

**ENTER:**

                                     */s/ Harry S. Mattice, Jr.*
                                  HARRY S. MATTICE, JR.
                                  UNITED STATES DISTRICT JUDGE